In re Terrill : Meehan, Guardian *ad litem,* Appellant, vs. Mitchell and others, Respondents.

*February 10—March 10, 1942.*

54

For the appellant there was a brief by *McGowan & Geffs,* attorneys, and *Eli Bloch* of counsel, all of Janesville, and oral argument by *Mr. Bloch.*

*Howard H. Moss,* district attorney of Rock county, for the respondents.

MARTIN, J.    The statutory procedure for the examination and commitment of alleged feeble-minded persons under sec. 52.02 (1), Stats., is the same as the procedure for the determination in insane cases under sec. 51.01 (1).   Sec. 51.01 (1), so far as here applicable, provides:

"Whenever any person within this state shall be believed to be insane, application may be made in the manner prescribed in subsection (2), by any three citizens, *one of whom is to be the nearest relative or friend available,* or a person with whom the person resides, or at whose house he may be, to the judge of the county court or of a district court which is a court of record, or in the absence or disability of such judge to the judge of any court of record acting in his place, for the county in which such person is found, for a judicial inquiry as to his mental condition and for an order of commitment."

The application for judicial inquiry in the instant case alleges that Mary Mitchell, one of the applicants, is the nearest friend available.   The application on its face shows full compliance with the provisions of sec. 51.01 (1), Stats., and therefore conferred jurisdiction both as to the subject matter and the person.   The motion to dismiss the proceedings was properly denied.

In *Guardianship of Simmons,* 236 Wis. 305, 309, 294 N. W. 821, the court said:

"The only thing that has been held to defeat jurisdiction is omitting from the petition the things that the statute says must be stated therein."

The facts required by the statute are here stated in the application.

Appellant relies principally upon the decision in *Appeal of Royston,* 53 Wis. 612, 11 N. W. 36. That case and the reason for the rule there stated has no application here. There the petition was for the appointment of a guardian of the person and estate of the alleged incompetent. The petition alleged that Royston, by reason of extreme old age (eighty-seven) and consequent infirmity of body and mind, was mentally incompetent to have the charge of his property; that he had a considerable amount of personal and real estate; that he was in need of a guardian to have and take care of him. It was held that the county court obtained no jurisdiction of the proceedings because the petition filed was not verified, and therefore the circuit court obtained no jurisdiction on appeal, even where the whole matter was tried *de novo* in the appellate court. At page 624 the court said:

"We are, however, inclined to think that under the statute [sec. 3976, R. S. 1878] the county court should not proceed to the appointment of a guardian under the statute, when there are near relatives of the person, with whom he resides, or who have the care of him, on the application of a friend, unless it appears from the petition that there is some good reason why the application is not made by such relatives. The statute, we think, contemplates that the relatives shall make the application, when there are any in the immediate vicinity of the insane or incompetent person; and this should be so, especially when the court proceeds to appoint a guardian of the person of one insane or incompetent. The custody of a father, or grandfather, should not be taken from a son, or daughter, or grandchild, or other near relative, on the application of one not being a relative, unless there be some other reason shown than that his physical and mental powers have become enfeebled by age, and certainly not upon the application of a person who makes the application because of some ill will or misunderstanding between himself and the person who has the management of his estate."

It seems obvious that what is said above with reference to the appointment of a guardian of the person and estate of an alleged incompetent can have no application to the mere setting in motion of a judicial inquiry to determine whether a certain person is feeble-minded, as in the instant case.

It is not contended here that Alice Terrill was not feeble-minded and a proper person to be institutionalized. It will serve no useful purpose to detail the mental or moral delinquencies of Alice Terrill. When it was time for the mother or the aunt or uncle to act they failed to do so. Mary Mitchell, a social worker of twelve years' experience in the city of Janesville, who had known Alice for six or seven years, came to her assistance and demonstrated that a friend in need is a friend indeed. Although the mother and aunt testified at the hearing they did not disclose a willingness to initiate any inquiry into Alice's mental condition, nor did they disclose the name of any relative or friend of Alice available to initiate such proceedings. It frequently happens that parents and other near relatives or close personal friends are unwilling to sign an application for the purpose of initiating a judicial inquiry as provided in sec. 51.01 (1), Stats. Society has a direct interest in having such inquiries made.

In *Ned v. Robinson,* 181 Okla. 507, 74 Pac. (2d) 1156, in which the proceeding was instituted for the appointment of a guardian for Ned on the ground of mental incompetency due to habitual drunkenness, a motion was made and denied to vacate the judgment of incompetency and appointment of a guardian for lack of jurisdiction on the ground that Robinson was neither a relative nor friend within the meaning of the Oklahoma statute permitting a "relative or friend" to file such petition. Robinson was not a relative. In affirming the judgment of the lower court, at page 508, the court said:

"Although the statutes governing inquisitions of incompetency are usually followed strictly, it is true after all that that with which the courts are mainly concerned is not who insti-

tutes the proceeding, but whether it is for the best interest of the individual and of the people among whom he lives."

In *Bode v. Schmoldt,* 177 Wis. 8, 12, 187 N. W. 648, 187 N. W. 1024, referring to an application in an insanity proceeding, the court said:

"It will be observed that the original application does no more than call the attention of the county judge to the fact that a person is believed to be insane; that application results in nothing more than the appointment of physicians to examine into the sanity of the suspected individual. If the physicians report the subject to be sane, the proceedings are ended. The suspected person is not arrested, he is not detained, his liberty is in no manner interfered with."

Whether Mary Mitchell was the nearest friend available presented an issue of fact for the judge of the county court to determine. On competent evidence the judge found that she was. The finding to that effect must be sustained. In fact there is no credible evidence to the contrary. The rule is elementary that this court will not disturb the findings of the trial court unless they are contrary to the great weight and clear preponderance of the evidence.

The alleged error because of the participation of the assistant district attorney in the proceedings is without merit. Sec. 59.47 (1), Stats., makes it the duty of the district attorney to "prosecute or defend all actions, applications or motions, civil or criminal, in the courts of his county in which the state or county is interested or a party."

Both the state and the county are interested in these proceedings. Referring to the above section in XXV Op. Atty. Gen. 549, 551, the attorney general said:

"In proceedings of this sort [insanity hearings, etc.] the county or state, and often both, are interested. In many of these matters they are interested directly since the financial burden for support may fall on either or both of these governments. Aside from the financial interest there is also the

59

general public interest to insure proper and fair treatment of those persons who have become or may become public charges in whole or in part. And often it is important that the state and county be represented in proceedings which may not be criminal to show why certain persons should be confined to institutions' or otherwise cared for as a protection to the rest of the citizens."

*By the Court.*—Order and judgment affirmed.